FLAVIA M. T. PENDILL ET AL. v. THE LUCY MINING COMPANY ET AL.

*Lease—Surrender—Removal of fixtures—Non-payment of royalties*

Provision was made in a mining lease for its termination 60 days after the delivery by the lessee to the lessor of a written surrender thereof, and the payment of all royalties due thereon. The lease further provided that upon the performance of

[1] See *Perrin v. Lepper,* 72 Mich. 454; *Barnes v. Marshall,* 102 Id. 248.

such conditions the lessee might remove the buildings, machinery, and other fixtures which he had placed on the land. The assignee of the lease sent to the lessor the required surrender. The lessor wrote the assignee acknowledging its receipt, and stating that it had been recorded, and that it disposed of the lease. Subsequently an arrangement was made between the lessor and the assignee whereby the latter used the pumps for a week, and the charges therefor were paid by the lessor. Without having paid the royalties due on the lease the assignee removed the buildings, machinery, etc., from the land, after which it made such payment. The lessor sued in trover for the value of the machinery, claiming that there had never been a surrender of the lease, owing to the non-payment of the royalties; that, if it should be held that the surrender was effected by the subsequent payment of said royalties, at the time the assignee removed the machinery sued for no right of removal existed, as said royalties had not *then* been paid. And it is held that the action of the lessor in assuring the assignee that the surrender ended the lease, the subsequent receipt for the royalties, and the payment for using the pumps, amounted to a ratification of the surrender, and that as the payment of the royalty, which should have been made prior to or concurrently with the removal of the machinery, was subsequently made, the damage to the lessor was nominal; citing *Haven v. Manufacturing Co.*, 40 Mich. 287.

Error to Marquette. (Stone, J.)   Argued April 5, 1895. Decided April 30, 1895.

Trover.   Plaintiffs bring error.   Affirmed.   The facts are stated in the opinion.

*Clark & Pearl,* for appellants.

*Hayden & Young,* for defendants.

Montgomery, J.   Plaintiffs are owners of the fee of a mine in Negaunee, Marquette county.   On the 21st of December, 1886, they made a lease to one Don H. Bacon, for the term of 99 years, subject to be determined as hereinafter stated, which lease was subsequently assigned to defendant the Lucy Mining Company.   The provisions of

the lease, as far as material to the questions raised in the present case, were the following:

"The party of the second part may erect buildings, put in engines and machinery, build roads, make excavations, and do such other things on said lands proper and expedient for carrying on exploring and mining; all such engines, buildings, machinery, and other improvements shall form part of the realty when put up and erected: *Provided* that, on the termination of this lease, the party of the second part, by paying all rents, royalties, taxes, and assessments that may be due or owing according to the terms hereof, may, within sixty days after such termination, remove such buildings, engines, tramways, machinery, and rails on any track owned by said party of the second part, but not otherwise."

It was further provided that:

"The party of the second part may at any time surrender and terminate this lease by executing and delivering to each of said parties of the first part, at their business office or residence, a written surrender or release thereof, in proper form for recording in the office of the register of deeds, and by paying up all arrearages of rent, royalty, or taxes that may be due or owing up to the time such surrender takes effect. This lease shall cease and determine 60 days after the delivery of such written surrender, and the payment of such royalties and taxes as aforesaid."

The lease further provided that,—

"Whenever this lease is terminated, the party of the second part, his successors, heirs, and assigns, shall and will peaceably and quietly leave, surrender, and yield up the said premises unto said parties of the first part, their successors and assigns."

On the 17th of July, 1893, the defendant company executed a written surrender of the lease, and forwarded the same to the plaintiffs, with a letter which, among other things, contained the following:

"We, however, are still operating the pumps, and will continue to do so for four days after this surrender is delivered to you, to enable you to make such examination in the meantime as you choose to make, and to

decide upon and inform us of any disposition you desire to be made of the property thereafter, so far as we may be able in justice to accommodate you. We therefore invite you, before withdrawing the pumps, to inspect the property, and advise you that we will be willing to make any fair arrangement whereby the plant may be continued upon the property for use by you, either during the coming sixty days or thereafter, as we may be able to agree."

It appears that the business between the defendants and the plaintiffs had been conducted on the part of the plaintiffs by James Pendill, in the main; but at the time these notices were sent he was away from home, and Frank Pendill looked after the interests of the plaintiffs. James Pendill testifies that most of his business was looked after by his brother Frank in his absence, and, while it does not clearly appear that Frank had authority to act for the other owners of the mine in the first instance, such authority is perhaps fairly inferable. However this may be, it will be seen later on that his acts in this matter were subsequently ratified. On receipt of the notice, and under date of July 18, Frank Pendill wrote defendant's manager as follows:

"Yours of 17th, containing surrender of Lucy Mine lease, to hand this a. m., and same has been put on record, which disposes of lease. I write James P. by this mail. He is on his way to Detroit from the East, and will arrive there, he said in last letter I had from him, on Thursday, 20th. Still it may be a day or two later. I write him to wire me upon his arrival there. If I do not see you in this city by Thursday a. m., I will go to Negaunee and call on you."

Subsequently, Frank Pendill made an arrangement with the superintendent of defendant to run the pumps for a week, which was done, and an account was subsequently rendered to James Pendill, who, representing all the plaintiffs, adjusted the account, and allowed a credit for the charge of $111.27 for that service. On the 2d of October the defendant rendered a report of shipments in August and September, but, as there was a

claim of a slight discrepancy in previous months, the royalty was not then paid. This report was subsequently, corrected by paying the items claimed by the Pendills, and a receipt was given as follows:

"Received from Lucy Mining Company three thousand two hundred eighty 70-100 dollars ($3,280.70-100), being the balance due as royalty on ore shipped from Lucy Mine from the beginning of their lease to above date.

"JAMES PENDILL.

"All of the other members of the family agree that above is correct. J. P."

Before this payment was made, the defendants removed the machinery placed upon the property by them, and this action was instituted both after the machinery had been removed and the payment made, to recover in trover the value of the machinery.

It is claimed by the plaintiffs that there has never been a surrender of the lease, for the reason that the defendants had not fully complied with the provisions relating to the surrender, by making payment of royalties; and, second, if it be held that such a surrender has now been effected and completed, that, at the time the defendants removed the machinery from the premises, no such right existed, they not having then paid the royalty.

As to the first question, the letter of Frank Pendill, assuring defendant, as it did, that the surrender ended the lease, and the subsequent receipt for royalty, and the adjustment of the account, including a charge for pumping, are only consistent with an intent on the part of the Pendills to ratify the surrender; for, unless there was a surrender, the charge for pumping was not justified, and no objection whatever appears to have been made to it. The inference is irresistible that all the parties regarded the lease as at an end.

As to the second contention of plaintiffs, it may be conceded that the payment of royalty and the removal of the machinery should have been simultaneous, or that the

removal should not have preceded the payment of the royalty due. It cannot be doubted that at the time the removal was made the right to remove existed, depending only upon the condition that plaintiffs should be p^id the royalty then accrued. How much were the plaintiffs damaged by the failure of defendants to observe the proper order of proceeding? It is plain that, as the payment which should have been made prior to or concurrently with the removal was subsequently made, the damage to plaintiffs could not have been more than nominal. We think the case is ruled by *Haven v. Manufacturing Co.,* 40 Mich. 287.

Judgment will be affirmed, with costs.

McGRATH, C. J., LONG and HOOKER, JJ., concurred. GRANT, J., did not sit.